131.    Plaintiff sought mental health treatment to address the emotional trauma caused by the nearly decade-long invasion of her privacy.

132.    Plaintiff also incurred significant out of pocket expenses to hire professionals to search for and attempt to remove the images from public websites and search engines.

133.    Despite Plaintiff's ongoing efforts, the images continue to resurface and remain publicly visible online.

134.    Most recently, on April 15, 2025, a stranger contacted Plaintiff and informed her that seven nude images of her had been published on a website called "sltboard.space" by User "darkeyedman."

135.    These images depict her bare breasts, genitals, writing on her body, full face, and her performing sexual acts.

136.    The images are accompanied by Plaintiff's full name, her profession as a playwright and screenwriter, her location in Brooklyn, New York, and additional clothed images that confirm and expose her real-world identity.

137.    Beneath the images and identifying information, are the instructions, "Extend, save, and repost whore [Plaintiff].

138.    On April 16, 2025, Plaintiff discovered that a website was created on a "cam" platform in her name.

139.    The website is www.camsoda.com/[Plaintiff's First Name]-[Plaintiff's Last Name] and falsely states that she is available for "camming" work which is performing sexual acts on camera in exchange for money – one of the false and harmful statements Defendant made about Plaintiff to third parties.

## SECOND CAUSE OF ACTION
Violation of New York State Civil Rights Law Section 52-b

1.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2.    Plaintiff had a reasonable expectation that the intimate photos and videos would remain private, and/or subject to the reasonable safeguards imposed by the Plaintiff.

3.    The intimate photos and/or videos of Plaintiff depict an unclothed or exposed intimate part of Plaintiff or Plaintiff engaging in sexual conduct with another person, as defined by statute.

4.    The intimate photos and/or videos of Plaintiff were disseminated and/or published by the Defendant without Plaintiff's consent.

5.    The intimate photos and/or videos of Plaintiff were disseminated and/or published by Defendant for the purpose of harassing, annoying, or alarming the Plaintiff.

6.    As a result of Defendant's actions, and threats to Plaintiff after her discovery of Defendant's unlawful conduct, Plaintiff has suffered damages.

## THIRD CAUSE OF ACTION
Violation of New York City Administrative Code Section 10-180
(Unlawful Disclosure of Intimate Images)

1.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2.    Plaintiff is a "depicted individual" as that term is defined under New York Administrative Code Section 10-180 (the "Code").

3.    Defendant is a "covered recipient" as that term is defined under the Code.

4.    Plaintiff provided Defendant with one or more "intimate images" as that term is defined under the Code, which included depictions of "intimate body parts" and/or "sexual activity" as those terms are defined under the Code.

5.    As detailed above, Defendant disclosed some or all of the "intimate images" to

27

79.    When KMT asked Defendant, "Btw: do you think she is ok with this conversation… would you share it with her?," Defendant responded, "I'd keep it between us at this stage."

80.    When KMT stopped responding to Defendant in June 2020, Defendant persisted, messaging her on July 28, 2020; August 6, 2020; August 9, 2020, August 23, 2020; and August 24, 2020, attempting to elicit a response so Defendant could share additional false statements about Plaintiff.

81.    Defendant sent KMT an image of Plaintiff in her bra and underwear and falsely claimed that Plaintiff had sent the photograph to him while she was with another man.

82.    Defendant's conversation with KMT and his distribution of Plaintiff's intimate images were done without Plaintiff's knowledge or consent.

83.    In approximately April 2020, Defendant sent Plaintiff and Defendant's former neighbor and friend, "EW" two intimate images of Plaintiff including:

> a.    An image of Plaintiff standing with a black brassiere on and garters, and with her genitals exposed;
>
> b.    An image of Plaintiff lying down, with her face and genitals exposed.

84.    In his conversation with EW, Defendant falsely wrote, "[Plaintiff] likes exhibitionism a lot … She used to cam [i.e., perform sexual acts on camera in exchange for money] … She's quite submissive … She's a breast woman."

85.    Defendant also falsely told EW, "She really likes being wet in public … one of the hottest she has ever been was after being felt on the subway [by a] stranger … she came home with no panties…" and Defendant asked EW to photograph the two of them because Plaintiff would maybe "want you to more than just photograph."

155.    At one point Defendant claimed he had been blackmailed by a stranger online into sharing the images of her, but later recanted this blaming Plaintiff for being "hell-bent on getting [him] to tell [her] more stuff, and … so [he] thought if [he] made up a story, ["she'd] stop asking [him] for details."

156.    On July 18, 2024, Defendant emailed Plaintiff, "I am so sorry. Sorry for hurting you. Sorry for sharing things you did not want shared. Sorry that my actions have brought on feelings of shame and a loss of autonomy and control. Sorry for stories or facts that were true, but not mine to share. And sorry for those made up."

157.    Plaintiff asked Defendant if they could review his Facebook messages together so she could see who he had sent her images to and Defendant told her that he wanted to talk to his therapist first.

158.    The next time Plaintiff brought up reviewing the Facebook messages together, she discovered Defendant had deleted his Facebook account to hide the evidence of his offenses.

159.    Indeed, Defendant purposefully destroyed relevant evidence, with full consciousness of the severity of what he had done and the extent of harm he had caused Plaintiff.

160.    On or around July 15, 2024, Defendant began contacting his and Plaintiff's mutual friends, whose family members or friends had been sent the intimate images of Plaintiff.

161.    Upon information and belief, the purpose of Defendant's phone calls was to investigate whether these individuals were aware of the images and whether they might inform Plaintiff about them.

162.    For example, on July 12, 2024, Defendant called "AW," a professional contact and friend of both Plaintiff's and Defendant's, who is also the best friend of ST and the brother of JW.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                                          )
JANE DOE,                                 )
                                          )
                    Plaintiff,            )
                                          )         ___CV_____
        -against-                         )
                                          )         **COMPLAINT**
JASON WOJCIECHOWSKI AND                    )
JOHN DOES 1-10                            )
                                          )
                    Defendants.           )
                                          )
                                          )
                                          )
_____ )

PLAINTIFF JANE DOE, individually, by and through attorney LINDSAY LIEBERMAN of LINDSAY LIEBERMAN LLC, brings this lawsuit against DEFENDANT JASON WOJCIECHOWSKI. In support of the Complaint, JANE DOE alleges the following:

PRELIMINARY STATEMENT

1.      This case is about a woman's right to privacy, dignity, and control over her own body – and the devastating consequences when those rights are violated by someone she trusts most.

2.      Over the course of their marriage, Defendant, Plaintiff's husband, persuaded Plaintiff to capture and share nude images with him, depicting her face, with the explicit understanding that they were to remain private, between the two of them.

3.      For nearly ten years, Defendant secretly distributed dozens of the nude images and videos – depicting Plaintiff's face and most intimate body parts – to strangers on the Internet,

1

115.    While Plaintiff was involved in these outside encounters and relationships, Defendant pressured her to disclose explicit details of her experiences and demanded photographic evidence.

116.    Plaintiff never consented to the distribution of any intimate images or videos that showed her face or identified her in any way and on the contrary had repeatedly told Defendant that any images that did contain her face or identify her were to remain private between them, as a married couple.

117.    Defendant's distribution of the intimate images that identified Plaintiff and/or contained her face were all done without Plaintiff's knowledge or consent.

PLAINTIFF'S DISCOVERY OF DEFENDANT'S DISTRIBUTION OF INTIMATE IMAGES

118.    In June 2024, Plaintiff discovered that Defendant had secretly disseminated the deeply personal and intimate images – showing her face and clearly identifying her – to several individuals, including people she personally knew and professional contacts over the prior ten years.

119.    Plaintiff became aware of Defendant's campaign of nonconsensual image distribution when a man Plaintiff knew personally – one of the individuals to whom Defendant had sent her images – told Plaintiff about them.

120.    Shocked and humiliated, Plaintiff began reaching out to friends and acquaintances to learn whether they knew anything about Defendant's actions.

121.    Plaintiff has since identified twelve individuals she personally knew, from all stages of her life, who received nude images of her, depicting her face, from her own husband without her knowledge or consent.

61.     Defendant falsely represented to GH that Plaintiff had engaged in sexual relationships with other individuals and expressed interest in forming a "throuple" with GH, including the prospect of GH moving in with them, along with their three-year-old child.

62.     In January 2020, Defendant again reached out to Plaintiff's professional contact, MA, via Facebook Messenger and initiated inappropriate sexual conversations about Plaintiff.

63.     During these exchanges, Defendant made false and damaging statements about Plaintiff to MA including the following:

   a.  Plaintiff was interested in having a sexual encounter with MA but was "too shy to act directly…" "but… [at] times [Plaintiff] left [MA] clues;" and

   b.  Plaintiff was "touching herself" in MA's bathroom, while visiting him for work-related purposes.

64.     Part of Defendant's conversation with MA was as follows:

> Defendant: "[Would you] Rather see her masturbating with her toy or giving a blowjob?"
>
> Defendant: [Sent video of Plaintiff masturbating].
>
> MA: "Do u tell her when u send me this?"
>
> Defendant: No sir. I thought that was clear.

65.     When MA asked Defendant about Plaintiff's level of involvement or awareness of the situation, Defendant responded, "Really? I told you she wouldn't be directly [involved] or know."

66.     Defendant sent MA at least two graphic videos of Plaintiff engaged in explicit sexual encounters.

122.    Most of these instances of nonconsensual image distribution are laid out in the section above titled, "Distribution of Intimate Images," though not all.

123.    For each recipient of the nude images, Defendant also made false and sexually explicit, statements about Plaintiff.

124.    Plaintiff has also identified two individuals personally known to her who received images of Plaintiff in lingerie from Defendant, without her knowledge or consent, accompanied by false and sexually explicit statements about her.

125.    Plaintiff has further identified nine additional individuals personally known to her to whom Defendant made false and sexual explicit statements about Plaintiff.

126.    Upon further investigation, in August 2024, Plaintiff found six nude images of her published on public Internet pornography websites, including Erome.com and Rexxx.org.

127.    On Erome.com, the images published by user included one that depicted Plaintiff fully nude, with her face, breasts, nipples, and genitals exposed that was taken without Plaintiff's knowledge or consent inside her bedroom.

128.    On Rexxx.org, Plaintiff's nude images included her first name in both the URL and the thumbnail video captions and one of the video thumbnails on with Plaintiff's image was captioned "Cucks girl [Plaintiff's First Name] using dildo."

129.    Prior to June 2024, Plaintiff was unaware of any incidents of Defendant's nonconsensual disclosure of her intimate images or the dissemination of false and embarrassing statements about her.

130.    Upon discovering the unauthorized distribution of images, Plaintiff increased the frequency of her therapy sessions from twice a month to once a week, in order to address the heightened emotional distress and need for additional mental health support.

5.      As a direct and proximate result of Defendant's unlawful actions, Plaintiff has been damaged and continues to suffer damages, including but not limited to physical, psychological, emotional, reputational, and professional harm.

6.      As a direct and proximate result of Defendant's unlawful actions, the Plaintiff has been damaged and continues to suffer damages, including but not limited to physical, psychological, emotional, reputational and economic harm.

7.      Defendant acted with willful and wanton negligence, recklessness, and/or a disregard, justifying punitive damages.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant her the following relief:

A. Awarding Plaintiff the greater of her actual damages, or, in the alternative, liquidated damages in the amount of $150,000.00 per image, pursuant to 15 U.S.C. § 6851(b)(3)(i);

B. Compensatory damages, including past and future economic damages and non-economic damages;

C. Punitive damages, as allowed by law;

D. Attorneys' fees, as allowed by law;

E. All costs associated with this action, including, but not limited to, expert fees, deposition expenses, travel expenses, filing fees, and trial presentation expenses on all claims allowed by law;

F. Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate;

33

179.    Defendant contacted individuals from every stage of Plaintiff's life – high school friends, college friends, work colleagues, international friends, mutual friends, former neighbors, both men and women.

180.    Defendant's goal was to create a false and humiliating picture of who Plaintiff was to her entire community and he succeeded.

181.    Defendant's messages to third parties, including MA, MS, KMT, EW, JW, and LV, telling them to keep the images and conversations between them, or from Plaintiff, evince his intention for everything to be kept from Plaintiff's knowledge – further demonstrating his intent to humiliate and harm her.

182.    By keeping his actions secret, Defendant ensured that Plaintiff had no opportunity to object, prevent the harm, or protect herself from the violation of privacy and the ongoing publication of her most intimate images.

183.    In approximately summer 2024, when Plaintiff told Defendant she was devastated, wanted to separate, and was exploring her legal options, Defendant started threatening to "expose" her using content he claimed to have found on her devices.

184.    Defendant continues to threaten Plaintiff and dissuade Plaintiff from pursuing legal action against him for his violations of her privacy.

185.    Defendant has used these threats to attempt to manipulate Plaintiff into remaining in the marriage, dissuade her from taking legal action against him, and most significantly to shield himself from accountability for his conduct.

186.    As a result, Plaintiff has suffered severe psychological distress, anxiety, loss of sleep, and emotional trauma, feeling completely stripped of her autonomy and dignity.

committed against the Plaintiff, Plaintiff has suffered and continues to suffer severe emotional injuries including, inter alia, mental distress, embarrassment, humiliation, stress, anxiety, anguish, as well as physical injuries, and economic and reputational losses.

### SIXTH CAUSE OF ACTION
Defamation

1. Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2. Defendant knowingly published false and disparaging statements of fact about Plaintiff's sexual life to third parties, including acquaintances, friends, professional associates, professional contacts, and persons unknown to Plaintiff.

3. Defendant knew these statements to be untrue and specifically instructed recipients to keep these exchanges confidential and not let Plaintiff know about these false and disparaging statements.

4. Defendant made these statements without privilege or authorization from Plaintiff.

5. Plaintiff is a private figure, so the applicable standard for defamation is negligence.

6. Defendant's outrageous defamatory false statements about her sexual life malign and impeach her character, integrity, and reputation both personally and in the business community.

7. Defendant's defamatory statements exposed Plaintiff to public contempt, hatred, ridicule, embarrassment, shame, aversion or disgrace.

8. As a direct and proximate result of Defendant's unlawful actions, it has caused irreparable harm to Plaintiff personally, professionally and socially.

9. Plaintiff has been damaged and continues to suffer damages, including economic, physical, reputational, and emotional damages.

95.     Defendant stopped waking up in the morning at a regular time, began staying up late, and exhibited increasingly unhealthy behaviors, including drinking alcohol more frequently and appearing in public unshowered, with greasy hair.

96.     Plaintiff struggled with this situation, as she had no interest in the lifestyle Defendant was pushing for but felt compelled to maintain their family unit—particularly given that they now had a four-year-old child together and Plaintiff wanted to help Defendant through his personal and professional struggles.

97.     Plaintiff explained to Defendant that divorce was her "greatest fear."

98.     Defendant leveraged this fear to his advantage.

99.     Defendant presented compliance as the only way to keep their marriage intact, essentially providing Plaintiff with an ultimatum.

100.    After years of pressure from Defendant, Plaintiff reluctantly agreed to Defendant's terms that they start considering sexual encounters with other people.

101.    Soon after Defendant insisted on opening the marriage, Plaintiff began seeing a therapist to cope with the emotional distress caused by the new, unwanted, relationship dynamics.

102.    Defendant searched for intimate partners for Plaintiff through online dating apps and set Plaintiff up with other people.

103.    Defendant arranged for Plaintiff to meet with other men under false pretenses and without her knowledge or consent.

104.    Defendant specifically went behind Plaintiff's back to find her a boyfriend, an acquaintance of theirs, named "MH."

147.     Indeed, during his conversations in which he shared intimate images of Plaintiff and spread false and disparaging information about her, Defendant explicitly instructed the recipients to keep the exchanges confidential and not let Plaintiff know.

148.     On June 11, 2024, Plaintiff confronted Defendant and Defendant admitted that he had shared intimate images of Plaintiff with MH, MS, and another recipient "EM."

149.     Defendant further told Plaintiff that he had uploaded Plaintiff's intimate images to online platforms and apps such as Reddit, Tinder, Feeld, and OKCupid.

150.     Despite admitting to distributing Plaintiff's images to three people and posting them online, Defendant refused to share the names of other individuals who received Plaintiff's images.

151.     This refusal to supply Plaintiff with this critical information prevented Plaintiff from approaching those recipients to explain what happened and prevented her from getting intimate images removed from websites.

152.     Defendant's intention to harm Plaintiff is clear in that several of his recipients warned Defendant that he should not be distributing her images without her consent, and his repeated assurances to third parties that the images had to stay private between them, that Plaintiff could not find out.

153.     On June 16, 2024, Defendant accepted some level of accountability and emailed Plaintiff, "you should have always been able to trust this as table stakes of our partnership. My violation of that trust makes this clarity necessary."

154.     When Plaintiff pressed further, in order to secure helpful information to clear her name and remove her private images from the Internet, Defendant changed his story multiple times.

54. These conversations with NP happened without Plaintiff's knowledge and consent.

55. Between 2016 and 2018, Defendant had several conversations his friend, "ST," about Plaintiff on Facebook Messenger.

56. Defendant sent nude images of Plaintiff including one that depicted Plaintiff in the shower with bubbles on her body and her nipples exposed.

57. On January 23, 2018, ST messaged Defendant and they engaged in the following conversation:

> ST: I gotta ask, either stop sending me these photos or have [Plaintiff] reach out and tell me she doesn't mind you sharing them.
>
> Defendant: Oh, definitely… Point taken… Need to be respectful and on the right side of history here!
>
> ST: If you're wading into these waters a thorough understanding of consent-in-kink is pretty essential.
>
> Defendant: Yes, I need to do some reading

58. These conversations with ST happened without Plaintiff's knowledge and consent.

59. In or around May 2019, Defendant began an affair with another woman, "GH," and subsequently sent GH nude images of Plaintiff without Plaintiff's knowledge or consent.

60. Defendant sent GH at least two images: one depicting Defendant engaged in sexual intercourse with Plaintiff, and another sexual image of Plaintiff.

9

140.    In addition to Plaintiff's full name, the CamSoda website also displays her location (New York , NY), age (42), hair and eye color, and an offensive and degrading description of her breasts as "small tits."

141.    Upon information and belief, individuals using anonymous accounts disseminated and republished Plaintiff's intimate images on various websites and social media platforms, including CamSoda, sltboard.space, Rexxx.org, Erome.com, nudedworld.com, freeones.com, motherless.com (by User "IrishRebel86"), and more.

142.    These individuals, currently identified only by their online usernames, are named herein as Doe 1 through 10. Plaintiff is informed and believes that these individuals acted with knowledge that the images were shared without consent, and with intent to harass, embarrass, or cause emotional harm to Plaintiff.

143.    Plaintiff has had to spend significant resources hiring professionals to attempt to get these images and websites removed.

144.    Plaintiff continues to live in a constant state of fear and anxiety, anticipating that additional images will emerge and be disseminated, requiring further costly and distressing efforts to have them removed.

145.    Since June 2024, Plaintiff has suffered irreparable harm and her suffering is ongoing.

**CONSCIOUSNESS OF LIABILITY**

146.    Throughout Defendant's campaign against Plaintiff, he knew he was hurting and humiliating her.

163.     Upon information and belief, the purpose of the call was to find out what he knew about Defendant distributing intimate images of Plaintiff.

164.     On July 22, 2024, Defendant attempted to call NP, to whom he had previously sent nude images of Plaintiff and attempted to coordinate a sexual encounter.

165.     Upon information and belief, Defendant and NP had never spoken on the phone before and there was no other apparent reason for the call.

166.     These efforts at damage mitigation further demonstrate Defendant's consciousness of guilt and intent to harm Plaintiff.

167.     Defendant had full knowledge that Plaintiff never consented to his distribution of her nude images with her face and identifying information, and started a campaign of destroying evidence.

168.     On August 16, 2024, Plaintiff discovered Defendant had been looking through Plaintiff's emails without her knowledge or consent when he was visiting his family in Oregon and she was notified that her Gmail had been accessed by someone in Oregon.

169.     Upon information and belief, Defendant had been monitoring and reading Plaintiff's emails for years because she had given him her old phone that he claimed to have needed for work.

170.     Defendant had previously asked Plaintiff for her old devices but said he would do a "factory reset" on the devices, so Plaintiff was unaware that Defendant had access to all her accounts, emails, and photos.

171.     Defendant has since threatened Plaintiff, stating that if she exercised her legal rights in response to his conduct, he would "expose" her using allegedly compromising information he claims to have found on her devices.

humiliation, stress, anxiety, anguish., as well as physical injuries, and economic and reputational losses..

10. Defendant committed the aforementioned acts alleged herein maliciously, fraudulently, and oppressively or with willful and wanton recklessness and or a conscious disregard of Plaintiff's rights, entitling her to recover punitive damages.

### FIFTH CAUSE OF ACTION
Negligent Infliction of Emotional Distress

1. Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2. Defendant owed Plaintiff a special duty of care because Defendant and Plaintiff engaged in a romantic, intimate and/or sexual relationship, as well as a marital relationship.

3. Defendant breached the duty of care owed to Plaintiff for failing to safeguard the intimate photos and/or videos of her that he recorded, possessed, and maintained.

4. Defendant carelessly and/or negligently exposed the intimate photos and/or videos of Plaintiff that he took, captured, obtained and or recorded to third parties without Plaintiff's knowledge or consent.

5. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered severe emotional distress.

6. Defendant knew or should have known that his negligence in failing to exercise due care in engaging in the aforementioned outrageous conduct toward the Plaintiff would create the probability that she would suffer emotional distress.

7. Defendant disregarded the substantial probability that his acts or omissions would cause Plaintiff severe emotional distress.

8. Defendant's conduct against Plaintiff was extreme and outrageous.

9. As a proximate result of Defendant's acts or omissions and other violations

71.     These communications with MA happened without Plaintiff's knowledge or consent.

72.     In February 2020, Defendant communicated with Plaintiff's professional contact and friend, "DD," via Facebook Messenger, spreading false information about Plaintiff's sexual proclivities.

73.     Defendant falsely told DD that Plaintiff desires "more dominant [men] who are a bit bigger and more alpha so to speak which [he] knows she craves."

74.     Defendant falsely told DD that during a work-related Zoom call with him, Plaintiff was not wearing pants and further claimed that before the call, Plaintiff had been "using her toy and talking about how she wished it was DD," that she "kept it in for the call," and that she "hoped something [sexual] might happen [with DD]."

75.     Plaintiff later traveled to DD's house and stayed there as work colleagues not knowing what her husband had communicated to him and sent to him without her knowledge or consent.

76.     Plaintiff later realized Defendant's action had put her at risk for being sexually harassed or worse during this visit.

77.     In 2019 and 2020, Defendant sent messages to an acquaintance, "KMT," falsely claiming that Plaintiff was sexually interested in her and making additional untrue statements, including that Plaintiff was in a relationship with another man, had engaged in a threesome and was romantically involved with a man in Los Angeles.

78.     In November 2019, Defendant asked KMT, "Can you keep this between us though? … She'd be embarrassed if your brother or anyone knew… She liked hearing about you and [KMT's partner]."

12

including on Reddit and dating sites, a s well as to mutual friends, acquaintances, and Plaintiff's professional contacts.

4.     Defendant's actions were not only a profound betrayal – they were calculated, sustained and intended to maintain control over Plaintiff's body and likeness.

5.     As a result of Defendant's actions, Plaintiff fears for her safety and wellbeing and has suffered emotional, psychological, mental, and financial harm.

6.     The intimate nude images of Plaintiff continue to be published online, and her suffering is ongoing.

7.     Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for violations of federal privacy laws, including 15 U.S.C. Section 6851; Defendant's disclosure of intimate images pursuant to New York's nonconsensual disclosure of images statutes; New York City's Administrative Code Section 10-80; outrageous conduct causing emotional distress; negligent infliction of emotional distress; breach of contract; and defamation.

PARTIES

8.     Plaintiff is a resident of Brooklyn, New York.

9.     Defendant is a resident of Brooklyn, New York.

10.    Plaintiff is currently unaware of the true names and identities of the individuals sued herein as John Does 1 through 10, inclusive. Upon information and belief, each of these individuals has participated in, facilitated, or is otherwise responsible for the nonconsensual dissemination of Plaintiff's intimate images. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

various third parties, without the Plaintiff's consent, and with intent to cause economic, physical, reputational, or substantial emotional harm to the Plaintiff.

6.      As a result of Defendant's acts and omissions, Plaintiff has suffered damages.

## FOURTH CAUSE OF ACTION
Outrageous Conduct Causing Emotional Distress

1.      Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2.      Defendant owed Plaintiff a special duty of care because Defendant and Plaintiff engaged in a romantic, intimate and/or sexual relationship as well as a marital relationship.

3.      Defendant breached the duty of care owed to Plaintiff for failing to safeguard the intimate photos and/or videos of her that he recorded, possessed, and maintained.

4.      Defendant's conduct, including the repeated dissemination of intimate images and recordings of the Plaintiff and false statements about her sexual life over a period of years, without her knowledge or consent was extreme and outrageous.

5.      Defendant knew his actions would result in severe emotional distress to Plaintiff, and did so anyway.

6.      Defendant engaged in outrageous conduct with the intention to cause, or with reckless disregard for the substantial probability that his acts or omissions would cause Plaintiff severe emotional distress.

7.      Defendant has threatened the Plaintiff with further exposure and harm if she brings legal action against him, causing her additional severe emotional distress.

8.      As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered and continues to severe emotional distress.

9.      As a result of Defendant's acts or omissions, Plaintiff has suffered and continues to suffer actual severe emotional injuries including, inter alia, mental distress, embarrassment,

28

9.     Defendant's defamatory statements are not opinion statements, are false, and are not privileged in any way.

10.     Plaintiff has been damaged and continues to suffer damages, including economic, physical, reputational, and emotional damages.

11.     The damages incurred by the Plaintiff are presumed damages that are associated with defamation *per se* and are damages which do not require the Plaintiff to prove actual injury or harm.

12.     Defendant acted with willful or wanton negligence, recklessness, and or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, justifying punitive damages.

### EIGHTH CAUSE OF ACTION
Breach of Contract

1.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2.     Plaintiff and Defendant had a mutual agreement that intimate images and videos depicting Plaintiff's face and nude body would remain private between them for their personal enjoyment as a married couple.

3.     At no time, did Plaintiff consent to the dissemination or publication of intimate images or videos depicting Plaintiff containing her face, name, identity or any other identifying information.

4.     Defendant breached this agreement by publishing and disseminating intimate photographs and videos depicting Plaintiff to third parties and public websites without Plaintiff's consent.

JURISDICTION AND VENUE

11.     Plaintiff's allegations that Defendant violated 15 U.S.C. § 6851 raises a question of federal law and this Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

12.     This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. §1367 (". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

13.     This Court has personal jurisdiction over the Defendant as, he not only resides in Brooklyn, New York, but all of the acts and events giving rise to this action occurred in New York.

14.     Venue is proper as both the Plaintiff and the Defendant reside in the counties comprising the Eastern District of New York, and the actions and events giving rise to this case occurred in Brooklyn, New York.

FACTUAL ALLEGATIONS

BACKGROUND INFORMATION:

15.     On July 3, 2011, Plaintiff met Defendant, and they began an intimate relationship.

16.     As their relationship progressed, Defendant revealed his sexual fantasies and encouraged Plaintiff to participate.

17.     One of Defendant's strong desires was to capture nude images of Plaintiff.

3

18.     Trusting Defendant within their monogamous relationship, Plaintiff agreed to the creation of intimate images that depicted her face and nude body.

19.     The parties explicitly agreed that these images, depicting her face and nude body, would remain private and solely between them and for their personal enjoyment.

20.     Plaintiff made it clear to Defendant on multiple occasions that she would be devastated if he ever shared these images.

21.     The still images Defendant captured were highly intimate and graphic, including depictions of Plaintiff's bare breasts, nipples, genitals, and anus, as well as images of Plaintiff engaging in sexually explicit conduct both by herself and with Defendant.

22.     Defendant also recorded videos of Plaintiff engaging in sexually explicit conduct with him and by herself.

23.     Over time, as Plaintiff became more desensitized to the nude images, Defendant increased the intensity of the nature of the images.

24.     Defendant convinced Plaintiff to allow him to capture images of her with writing on her naked body and others featuring his ejaculation on her body.

25.     As their relationship continued, Plaintiff took intimate photographs of herself and sent them to Defendant, believing they were solely for his private viewing.

26.     Defendant expressed fantasies involving Plaintiff engaging in sexual activity with other men, however from the outset of their relationship, Plaintiff was firm in her desire for a committed and exclusive relationship and rejected such fantasies.

27.     On September 15, 2012, Plaintiff and Defendant were married.

28.     In October 2015, Plaintiff and Defendant had a child together.

4

86.     Defendant also falsely told EW that Plaintiff had a sexual encounter with two men in Sri Lanka.

87.     After EW commented on one of Plaintiff's images, Defendant wrote, "now please delete ;)" and later told EW, "wanted to say thanks for keeping our more personal chat under wraps."

88.     Defendant's conversation with EW happened without Plaintiff's knowledge and consent.

89.     In June and July 2020, Defendant presented an ultimatum and told Plaintiff that he could not stay in the monogamous marriage and that they could only be happy together if she would agree to open the marriage.

90.     Plaintiff objected, making it clear that she was not interested in such an arrangement.

91.     Plaintiff was unaware that for the previous six years of their relationship, Defendant had been secretly distributing her intimate images and disseminating fabricated stories about her to third parties.

92.     Plaintiff begged Defendant to reconsider his desire for an open relationship both in person and in writing in several emails.

93.     Despite her objections, Defendant repeatedly raised his sexual fantasies and desires, applying increasing pressure on Plaintiff to comply.

94.     At this point, Defendant was dissatisfied with his professional work and seemed depressed, as noticed by Plaintiff and mutual friends.

10.    Defendant acted with willful or wanton negligence, recklessness, and or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, justifying punitive damages.

## SEVENTH CAUSE OF ACTION
Defamation Per Se

1.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2.    Defendant knowingly published false and disparaging statements of fact about Plaintiff's sexual life and unchastity to third parties, including acquaintances, friends, professional associates, professional contacts, and persons unknown to Plaintiff.

3.    Defendant knew these statements to be untrue and specifically instructed recipients to keep these exchanges confidential and not let Plaintiff know about these false and disparaging statements.

4.    Defendant knowingly engaged with Plaintiff's professional associates and contacts and published untrue statements about her sexual life, imputing her unchastity, all with the intent to malign and impugn her character, integrity, reputation, fitness and ability to perform and injure her both personally and professionally.

5.    Defendant made these statements without privilege or authorization from Plaintiff.

6.    Defendant's defamatory statements exposed Plaintiff to public contempt, hatred, ridicule, embarrassment, shame, aversion or disgrace.

7.    Plaintiff is a private figure, so the applicable standard for defamation is negligence.

8.    As a direct and proximate result of Defendant's unlawful actions imputing unchastity on a woman, has caused irreparable harm to Plaintiff personally, professionally and socially and is defamation *per se*.

67.     Defendant falsely told MA that Plaintiff was "careful when there is a professional relationship" in the context of suggesting that Plaintiff desired a sexual encounter with MA and further claimed that in the morning, Defendant would "touch" Plaintiff on MA's behalf and "even sneak a few photos."

68.     Indeed, Defendant proceeded to secretly capture several intimate and nude images of Plaintiff without her knowledge or consent and subsequently sent them to MA.

69.     Defendant sent MA seven nude images of Plaintiff that Defendant had captured of Plaintiff without her knowledge or consent in the privacy of her own home, including:

    a.  An image of Plaintiff standing up with her bare breasts and nipples exposed;

    b.  An image of Plaintiff putting on her brassiere with her breasts and nipples exposed;

    c.  An image of Plaintiff putting on brassiere with her breasts and nipples exposed;

    d.  An image of Plaintiff's nude body with her buttocks exposed and a towel wrapped on her head;

    e.  An image of Plaintiff's nude body facing front, taking off an orange bathrobe, with her breasts, nipples, face, and genitals exposed;

    f.  An image of Plaintiff bent over her dresser with her buttocks exposed; and

    g.  An image of the backside of Plaintiff reaching for something from her kitchen cabinet, with her bare buttocks exposed.

70.     Defendant likewise sent MA three nude images of Plaintiff while she was pregnant with their child displaying her bare breasts and nipples and one image of Plaintiff pregnant with her child that displayed her bare breasts, nipples, and genitals.

105.   On October 12, 2021, during his initial conversations with MH and without Plaintiff's knowledge or consent, Defendant offered Plaintiff to MH as if she was his possession, stating "I don't know if she's of any interest to you… " and sent two intimate images of Plaintiff.

106.   When MH asked Defendant if Plaintiff knew he was talking to him about this, Defendant wrote, "No. Hope that's okay."

107.   In December 2021, Defendant messaged with an acquaintance, "JW" and again spread untrue and harmful information about Plaintiff.

108.   Defendant wrote: "[Plaintiff's] quite an exhibitionist… Don't tell anyone that part… [Want] to see the vacay snap?... Stays between us guys."

109.   Defendant sent "JW" an image of Plaintiff standing, completely nude, with her face, breasts, nipples, and genitals exposed.

110.   On May 3, 2023, Defendant sent MH at least two intimate images of Plaintiff by text message, including:

   a.   An image displaying her bare breasts and nipples and genitals; and

   b.   An image displaying her breast and nipple.

111.   Also on May 3, 2023, Defendant sent MH at least one intimate video of Plaintiff depicting her bare breasts and nipples.

112.   On May 16, 2023, Defendant text messaged an image to MH depicting Plaintiff bare buttocks and anus.

113.   After Plaintiff reluctantly agreed to open the relationship, she engaged in intimate encounters with other people at Defendant's insistence.

114.   However, these experiences were largely marked by discomfort and anxiety, as this was not the type of relationship Plaintiff wanted for herself or her family.

187.     Plaintiff has no idea who has seen her naked body, heard false lies about her sexual proclivities or has been invited to have sex with her individually and/or with her and Defendant together.

188.     Plaintiff has suffered reputational and professional harm.

189.     This has caused Plaintiff to isolate from friends, work, and community, to feel humiliated, and suffer distress.

190.     Despite Plaintiff's efforts to mitigate the harm through therapy and professional content removal services, the emotional and financial stress is ongoing.

191.     Plaintiff seeks justice for this egregious and deeply personal violation.

192.     Plaintiff timely brings this action upon discovery of Defendant's inappropriate dissemination and publication of intimate images and videos of Plaintiff.

### FIRST CAUSE OF ACTION
15 U.S.C. § 6851 - Civil Action Relating to Disclosure of Intimate Images

1.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

2.     Plaintiff is a "depicted individual" as that term is defined in 15 U.S.C. § 6851 (the "Statute").

3.     As detailed above, Defendant possessed photos and/or videos of the Plaintiff that contained "intimate visual depictions" and/or "sexually explicit conduct" as those terms are defined in the Statute.

4.     Defendant caused such photos and/or videos to be disclosed to various third parties, without Plaintiff's consent as defined in the Statute.

5.     Defendant knew Plaintiff had not given her consent or recklessly disregarded that she had not given her consent prior to disclosing intimate images of Plaintiff.

6.     As a result of Defendant's actions, Plaintiff has suffered damages.

a. On Defendant and Plaintiff's wedding day Plaintiff slept with their wedding photographer while her best friend watched; and

b. Plaintiff had sexual experiences in Sri Lanka with men with whom she lived and that Plaintiff asked Defendant if "she could finger herself in front of them" and that one of the men "came on her."

38. Defendant likewise sent MS three images of Plaintiff in her bra and underwear.

39. Defendant also sent MS approximately ten graphic nude images of Plaintiff.

40. These graphic nude images included:

a. One of Plaintiff standing up completely nude with her face, breasts, nipples, and genitals exposed;

b. One of Plaintiff lying down on her back with her breasts, nipples and genitals exposed, and with her hand touching her genitals;

c. Another image of Plaintiff that is similar to the one above but this one depicts Plaintiff's face, and does not depict her genitals, only her breasts and nipples;

d. Another image from the same series where Plaintiff's face is not showing but all the other details are the same and her genitals, breast, and nipple are exposed;

e. Another image of Plaintiff with her breasts and nipples exposed with Defendant's ejaculation visible on her body;

f. An image of Plaintiff lying on her back on a bed with her breasts and nipples exposed with her hand on her genitals;

g. An image of Defendant's ejaculation on Plaintiff's buttocks;

6

DISTRIBUTION OF INTIMATE IMAGES

29.    Unbeknownst to Plaintiff, beginning as early as July 2014, Defendant began disseminating false and damaging information about Plaintiff, along with intimate nude photographs and videos depicting Plaintiff, to third parties—including both individuals known to Plaintiff and strangers.

30.    On July 11, 2014, Defendant messaged with a female acquaintance of Plaintiff's and Defendant's, "LV," on Facebook Messenger, and falsely told her that Plaintiff was fantasizing about women and propositioned her for a sexual encounter with Plaintiff.

31.    The friend declined but nonetheless Defendant sent a picture of Plaintiff in a bra and underwear.

32.    Defendant told LV not to "share [it]" and LV responded, "yeah, I probably wouldn't pass around a half naked pic of your wife to anyone."

33.    Defendant spoke with LV about Plaintiff in this intimate way and disclosed Plaintiff's intimate image to LV all without Plaintiff's knowledge or consent.

34.    In August 2014, Defendant communicated with Plaintiff's friend from high school, "HT," on Facebook Messenger, and asked if she was open to a threesome-type experience with Plaintiff and Defendant.

35.    Defendant's communications with HT happened without Plaintiff's knowledge and consent.

36.    In June 2015, Defendant started communicating with an acquaintance of Defendant's and Plaintiff's, "MS," on Facebook messenger, and told him false statements about Plaintiff's sexual life.

37.    Amongst the fabricated assertions Defendant told MS were:

49.    Defendant's communication with MA happened without Plaintiff's knowledge and consent.

50.    In November 2017, Defendant communicated with an acquaintance of both Plaintiff and Defendant via Telegram named "NP" and sent him explicit nude images of Plaintiff without her knowledge or consent.

51.    The images Defendant sent to NP include:

  a.  An image of Plaintiff's face, breasts, nipples, and genitals.

  b.  An image of Plaintiff lying down on a couch with her face, breasts, and nipples exposed.

  c.  An image of Plaintiff with Defendant's ejaculation on Plaintiff's face;

  d.  An image of Plaintiff lying on her back on a bed with her breasts and nipples visible, with her legs spread apart;

  e.  An image of Plaintiff's genitals;

  f.  An image of Plaintiff lying on her back with her breasts and nipples exposed; and

  g.  An image of Plaintiff masturbating.

52.    During Defendant's conversation with NP, Defendant tried to arrange a meeting between NP and Plaintiff without Plaintiff's knowledge or consent and wrote, "If [Plaintiff] opens up to it you could have her however you want …" "I'll think about the best way to get her comfortable for you."

53.    Defendant wrote to NP, "before you send anything like that [of a sexual nature] on here, be sure to first send a 'hey, how's it going' or something message and wait for me to respond in case [Plaintiff] or somebody is looking at my phone."

8

> h.  An image of Plaintiff's buttocks;
>
> i.  An image of Plaintiff's face, breasts, nipples, and genitals; and
>
> j.  An image of Plaintiff wearing a black bra and garters where her genitals are visible.

41.    To further support his false claim that Plaintiff had participated in a threesome with two men in Sri Lanka, Defendant sent MS two images depicting an unknown woman engaged in a graphic sexual act with two males, and another unknown woman engaged in a sex act, falsely representing these women as Plaintiff.

42.    During at least part of the conversation between Defendant and MS Plaintiff was pregnant with Defendant's child.

43.    Defendant spoke with MS about Plaintiff in this intimate manner and sent MS Plaintiff's intimate images all without Plaintiff's knowledge and consent.

44.    In 2016, Defendant contacted Plaintiff's professional associate, "AP," via Facebook Messenger – despite having no prior relationship or valid reason to do so – and spread false information about Plaintiff, including an implication that Plaintiff had a sexual encounter with another individual, "DD."

45.    At the time, Plaintiff and AP were attending a professional course together.

46.    Defendant spread false information to AP without Plaintiff's knowledge and consent.

47.    In February 2017, Defendant sent Plaintiff's professional contact, "MA," messages via Facebook Messenger asking MA if he wanted nude images of Plaintiff.

48.    MA declined.

7

172.    These vague and coercive threats have caused Plaintiff additional emotional harm and have instilled fear about pursing the legal remedies to which she is entitled.

**IRREPARABLE HARM**

173.    Defendant's actions have caused Plaintiff irreparable harm, forcing her to live in constant fear that these images will continue to resurface on the Internet and in personal, professional, and social settings.

174.    Plaintiff feels unsafe in her home, after being photographed while nude, without her knowledge or consent.

175.    Based on Defendant's past behavior and sexual proclivities, Plaintiff is unaware of the full extent to which her privacy has been—and continues to be—violated, particularly because Defendant remains in her home despite Plaintiff's repeated requests that he vacate.

176.    Plaintiff and Defendant's friend, "MV" messaged Plaintiff, "[Defendant] has been creating this image of you to other for years… for years [Another person] thought you were also kind of a pervert… This is the fucked up part – he got everyone to believe this fucked up narrative."

177.    Plaintiff learned that Defendant has sent at least 79 images of Plaintiff's nude body to at least twelve known individuals, including people in Plaintiff's personal and professional life.

178.    Upon information and belief, Plaintiff has learned that Defendant has sent Plaintiff's nude images to at least dozens or more strangers, online on dating apps and Reddit threads, and those Plaintiff has not yet uncovered.

G. Appropriate injunctive relief against Defendant pursuant to 15 U.S.C. § 6851(b)(3)(ii), N.Y. C.L.S. Civ. R. §52-b, and N.Y.C. Administrative Code 10-180, including a permanent injunction order requiring Defendant to:

    i. Cease displaying and disclosing the visual depiction of Plaintiff and any other visual depictions of Plaintiff in his possession and ordering the removal of such images from websites, as allowed by law;

    ii. Cooperate fully in the removal of Plaintiff's intimate images from the Internet;

H. Appropriate injunctive relief maintaining the confidentiality of the Plaintiff using a pseudonym pursuant to 15 U.S.C. § 6851(b)(3)(B) caused by the Defendant's nonconsensual disclosure of intimate visual depictions of the Plaintiff; and

I. Any other appropriate relief at law and equity that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


DATED June 13, 2025
      Brooklyn, NY

                    Respectfully submitted,
                    _/s/ Lindsay Lieberman_____
                    Lindsay Lieberman, LLC
                    5335 Wisconsin Avenue NW
                    Suite 440, PMB 4025
                    Washington D.C. 20015
                    (401) 314-0219
                    Lindsay@LindsayLieberman.com
                    Attorney for Plaintiff
                    Bar No: LL5437